**UNITED STATES of America, Appellee,**

v.

**Bruce Wayne ALLEN, Appellant.**

**No. 88–5340.**

United States Court of Appeals, Eighth Circuit.

Submitted April 25, 1989.

Decided Sept. 12, 1989.

Rehearing and Rehearing En Banc Denied Dec. 1, 1989.

Sidney B. Strange, Sioux Falls, S.D., for appellant.

David L. Zuercher, Pierre, S.D., for appellee.

Before ARNOLD, JOHN R. GIBSON and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Bruce Wayne Allen appeals from the sentence imposed on him after he pleaded guilty to distributing cocaine, in violation of 21 U.S.C. § 841(a)(1). Allen argues the District Court erred (1) in considering his pre-November 1, 1987 conduct in determining his base offense level, (2) in refusing to grant him a reduction in sentence for acceptance of responsibility, and (3) in imposing a fine on him. We affirm the judgment of the District Court.[1]

## I.

Sam Larson bought cocaine from the appellant, Bruce Wayne Allen, on numerous occasions between late August and late December 1987. On December 30, 1987, Larson was arrested. Four months later he began cooperating with the government and, as part of his agreement with the government, purchased cocaine from Allen while being monitored by government agents. Allen was arrested after the second such sale, on April 17th.

Allen was charged with three counts of distributing cocaine, 21 U.S.C. § 841(a)(1), two counts of using the phones to sell cocaine, 21 U.S.C. § 843(b), and one count of possession, 21 U.S.C. § 841(a)(1). Initially, Allen pleaded not guilty to all six counts. However, he later pleaded guilty to one count of distribution.

One issue hotly contested by the government and the appellant was the amount of cocaine relevant for purposes of sentencing. Section 1B1.3(a)(2) of the Sentencing Guidelines provides that, in determining the base offense level, the Court shall group "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of

1. The Hon. John B. Jones, United States District Judge for the District of South Dakota.

conviction." As the commentary to the provision explains:

> ... in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of [the same] common scheme or plan as the count of conviction.

Commentary, "Background." See also *United States v. Mann*, 877 F.2d 688 (8th Cir.1989). During plea negotiations, the government claimed Allen had either possessed or distributed a total of 4,016 grams of cocaine between August 1987 and April 17, 1988, and argued that the Court should consider that amount of cocaine in sentencing him under the Guidelines. Allen disagreed, contending the Court should consider only the 614.8 grams of cocaine referred to in the five counts of the indictment.

At Allen's sentencing hearing, both Allen and Sam Larson testified as to the amounts of cocaine Allen possessed during their various meetings. Testimony about the quantity of cocaine Allen had on hand during their pre-November 1987 encounters was contradictory. For example, Larson claimed that Allen had about a kilogram of cocaine with him at their first meeting, while Allen testified he had only two ounces. However, Larson's and Allen's recollections of later meetings were similar: Larson testified he saw appellant possessing or selling 728 grams of cocaine, while Allen admitted to responsibility for 752 grams of cocaine.

The District Court found as a fact that Allen was in possession of or distributing 780 grams of cocaine from and after November 1, 1987.[2] The Court went on to hold that all of the cocaine that Allen possessed between late August and November 1 should be considered in determining his base offense level. The Court found that Allen was responsible for a total of 2,060 grams of cocaine, yielding a base offense level of 28. The Court refused to depart downward from this level, rejecting Allen's

acceptance-of-responsibility claim, and determined that he had the money to pay a fine. Allen was sentenced to 78 months in custody, five years supervised release, a fine of $10,000, and a $50.00 special assessment fee.

On appeal, Allen contends that considering the cocaine he distributed before November 1, 1987—the Guidelines' effective date—in determining his offense level violates the Ex Post Facto Clause. (The District Court's finding as to the quantities involved is not contested in this Court.) He also contests the District Court's determinations that he should receive no reduction in sentence for acceptance of responsibility and that he had the means to pay a fine.

## II.

■ Allen argues that the Ex Post Facto Clause prevents the Court from considering his pre-November 1, 1987 conduct in determining his base offense level. In *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), a case involving the Florida sentencing guidelines, the Supreme Court set out the test for determining whether a criminal law is ex post facto: (1) "the law 'must be retrospective, that is, it must apply to events occurring before its enactment'" and (2) "'it must disadvantage the offender affected by it.'" (Quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981).) Allen claims this test is met in his case because his pre-Guidelines conduct was used to enhance the sentence for his post-Guidelines offense. If only his conduct after November 1 had been considered, he would have had a base offense level of 26, corresponding to a maximum of 78 months in prison. But when his earlier conduct was added in, he received a base offense level of 28, which carries a maximum of 97 months.

The government answers that Allen's sale of drugs was part of a continuing course of conduct that ran from August 1987 until his arrest in April 1988. Thus,

---

**2.** The higher figure found by the Court apparently reflects the cocaine turned over to the

authorities by Allen's girlfriend upon his arrest.

the government argues, it was proper to consider Allen's pre-November 1 conduct under both the Guidelines and the Constitution. We agree.

The Guidelines themselves require the sentencing court to group "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2). We read this provision to apply to continuing conduct that in part predates the Guidelines, and defendant does not argue to the contrary. *Cf. United States v. Tharp*, 884 F.2d 1112, 1115–1116 (8th Cir.1989) (Guidelines apply to a continuing offense begun before and completed after their effective date). Under the Guidelines, the District Court is required to consider a defendant's prior conduct in determining his base offense level.

This construction of the Guidelines' accumulation provision does not violate the Ex Post Facto Clause. This provision is very similar to a habitual-offender statute, in that it looks to a defendant's past criminal conduct in determining the degree of his current depravity. Habitual-offender statutes have long been upheld, since the extra sentence is viewed as a "stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948). So long as the actual crime for which a defendant is being sentenced occurred after the effective date of the new statute, there is no ex post facto violation.

### III.

Allen's next two contentions deal with whether the Guidelines were correctly applied in his case. He argues he should have received a reduction in sentence for accepting responsibility for his actions, and that he should not have been fined $10,000. We reject both of these claims.

■ The Guidelines allow the District Court to adjust a defendant's base offense level downward if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." § 3E1.1. Allen argues that he should have received the adjustment, since he expressed shame and remorse to the Court and his family and has changed his lifestyle since his arrest, giving up drugs. He also claims that he cooperated with federal agents.

The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. His decision to depart or not is entitled to great deference on review, and will not be disturbed unless it is without foundation. Commentary to § 3E1.1, Section 5. The judge in this case refused to reduce Allen's offense level because the defendant initially lied to authorities about his sources, and did not help to apprehend other drug dealers. These facts provide ample support for the Court's decision not to depart.

■ Next, Allen argues he should not have been assessed a $10,000 fine, claiming he lacks the money to pay a fine. During the presentence investigation, Allen reported a net worth of minus $18,643.24. However, from independent sources, the Probation Office discovered that Allen had purchased a 1984 Corvette three days before preparation of the PSI, applying $5,000 in cash and a $2,000 money order toward the purchase price. The commentary to § 5E4.2 of the Guidelines provides that "[t]he existence of income or assets that the defendant failed to disclose may justify a larger fine than that which otherwise would be warranted," and that "[i]f the Court concludes that the defendant willfully misrepresented all or part of his income or assets, it may increase the offense level and resulting sentence." Commentary, note 6. The Probation Office calculated that the appropriate fine for Allen's offense would be between $160,000 and $1,000,000. In light of Allen's misrepresentation of his assets, a $10,000 fine was well warranted.

Accordingly, the judgment of the District Court is affirmed.