UNITED STATES of America, Appellee,

v.

Zachary I. SAUNDERS, a/k/a Isaac
Jay Coleman, Appellant.

UNITED STATES of America, Appellee,

v.

Isaac Jay COLEMAN, a/k/a Zachary
I. Saunders, Appellant.

Nos. 91–1501, 91–2515.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1991.

Decided March 2, 1992.

Rehearing and Rehearing En Banc Denied
April 15, 1992.

Andrea K. George, Minneapolis, Minn., argued, for appellant.

Isaac Jay Coleman, pro se.

Douglas R. Peterson, Minneapolis, Minn., argued (Thomas B. Heffelfinger, U.S. Atty., on brief), for appellee.

Before LAY,* Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Isaac Jay Coleman a/k/a Zachary I. Saunders appeals from a final judgment entered in the United States District Court[1] for the District of Minnesota, upon a jury verdict, finding him guilty of six counts of social security number misuse in violation of 42 U.S.C. § 408(g)(2) (1988).[2] The district court sentenced defendant to thirty-six months imprisonment, five years of supervised release and a special assessment of $300.00. For reversal, defendant argues that the district court erred in (1) finding that the search warrant was sufficiently particular, (2) departing upward in sentencing, (3) departing upward for the term of supervised release, and (4) calculating the dollar amount associated with defendant's fraud. Furthermore, defendant argues the district court's denial of his Fed.R.Crim.P. 41(e) motion for return of certain property was unreasonable. For the reasons discussed below, we affirm in part and reverse in part the judgment of the district court and remand the case to the district court for further proceedings consistent with this opinion.

## I. FACTS

Defendant's real name is Isaac Jay Coleman, but throughout the trial below he went by the name "Zachary I. Saunders." Defendant has used various names and various social security numbers to obtain jobs

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

1. The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

2. The 1990 amendments renumbered this section and it is now found at 42 U.S.C.A. § 408(a)(7)(B) (West 1992).

and credit in different cities throughout the nation. Defendant, while in Chicago, met a woman named Brigid Randall. Defendant told Brigid Randall that he had attended Yale University and the Columbia Law School and was presently involved in the investment or merchant banking field and working out of London.[3] They began a relationship and defendant later moved to Minnesota where Brigid Randall resided. Defendant told Brigid Randall and her family that his name was Zachary Saunders and he had been in the Army and had a degree from Yale. To rent an apartment, defendant told the landlord that he was a visiting professor at the University of Minnesota Law School and provided a false name, false social security number, false bank information, and false employment history. After all of his rent checks were returned for insufficient funds (NSF), defendant was evicted and moved in with Brigid Randall and her daughter.

Defendant also opened up checking accounts at several banks, including Norwest Bank where Brigid Randall worked, using false social security numbers and other information. Many checks written on various accounts were returned NSF. Defendant also used false information to obtain a Minnesota driver's license and to obtain employment. Finally, defendant obtained and used an American Express Gold Card through a student application program. Defendant provided American Express with a copy of "his" University of Minnesota School of Law transcript, which turned out to be a doctored transcript of Brendan Randall, Brigid Randall's brother.

Maura Randall, Brigid Randall's sister, became suspicious of defendant because of the many discrepancies in statements he made describing himself and a check written to Brendan Randall. Following an investigation of defendant's bank records, a search warrant was executed on the residence of Brigid Randall where defendant resided, and defendant was placed under arrest.

On March 6, 1990, defendant was indicted and charged with five counts of social security number misuse. A second indictment was returned on April 4 adding an additional count in connection with the American Express Gold Card application. At trial, defendant represented himself with the Federal Public Defender's office acting as standby counsel. Defendant claimed at trial that he had worked as a legislative aide for a congressman and offered the privacy laws to justify his actions. The jury returned a verdict of guilty on all counts. Following trial, three sentencing hearings were held and defendant was sentenced to thirty-six months in prison and five years of supervised release. The district court also denied defendant's motion for return of some of the property seized in the search of Brigid Randall's residence pursuant to Fed.R.Crim.P. 41(e). This appeal followed. Defendant is represented by counsel on his direct appeal, but is appearing *pro se* for the purposes of his appeal of the district court's denial of his Rule 41(e) motion.

## II. ANALYSIS

### A. *Particularity of Search Warrant*

The search warrant for Brigid Randall's residence described the items to be seized as follows:

1. Identification documents, including, but not limited to driver's licenses, social security cards and supporting documents, bank documents and records, credit cards and supporting documentation, birth certificates, passports, and other indicia of residency and/or identity;

2. Address books, photographs, letters, notes, papers and other items that tend to identify co-defendants or co-conspirators;

3. Briefcases and other containers capable of storing the items described in Paragraphs 1 and 2;

4. Other material evidence of violations of 42 U.S.C. § 408, social security fraud, 18 U.S.C. § 1001, false statements.

---

**3.** All of this turned out to be false.

Defendant claims that this description is too broad and does not describe the items to be seized with sufficient particularity, thus giving the government the authority to seize anything. In support of this argument, defendant highlights the fact that eleven items were returned to defendant because they were beyond the scope of the search warrant. Defendant further asserts that the search warrant could have been made more precise by listing the specific social security misuse for which probable cause existed.

■ We disagree and hold that the warrant described the items to be seized with sufficient particularly to be valid under the Fourth Amendment. The constitutional standard for the particularity of a search warrant is that the language must be sufficiently definite to enable the searcher to reasonably ascertain and identify the things authorized to be seized. *Steele v. United States*, 267 U.S. 498, 503–04, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). "This Court has applied a standard of 'practical accuracy' in determining whether a description is sufficiently precise to satisfy the requirements of the Fourth Amendment, recognizing that the degree of specificity required necessarily depends upon the circumstances of each particular case." *United States v. Strand*, 761 F.2d 449, 453 (8th Cir.1985), *citing United States v. Johnson*, 541 F.2d 1311, 1314 (8th Cir. 1976). While it is true that a search warrant must be particular enough to avoid a "general, exploratory rummaging" of a person's belongings, *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), a search warrant involving a scheme to defraud is "sufficiently particular in its description of the items to be seized 'if it is as specific as the circumstances and nature of activity under investigation permit.' " *United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986), *citing United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). *See United States v.*

*Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988).[4]

■ We believe that for an investigation of social security number misuse, the warrant at issue was sufficiently precise. Paragraph one identifies documents commonly used for identification and thus directly relevant to social security number misuse. Because defendant had a history of social security number misuse in several states, paragraph two refers to evidence of any co-conspirators. The investigators had information that defendant kept the contents of his briefcase hidden from view, and therefore, paragraph three was proper because the officers had probable cause to believe that it might contain evidence. The final paragraph allows the seizure of other evidence relating to social security fraud. Just because some of the items seized were subsequently returned to defendant, it does not mean that the warrant was not sufficiently particular. We hold that this warrant met the requirements of particularity and is therefore valid under the Fourth Amendment.

**B.  Upward Departure in Term of Imprisonment**

The district court computed defendant's offense level as eight and his criminal history category as VI, thus resulting in a guideline sentence range of eighteen to twenty-four months imprisonment and two to three years of supervised release. The district court then departed upward, sentencing defendant to thirty-six months imprisonment and five years of supervised release.

■ Defendant argues that the district court improperly departed upward in sentencing him. The district court may depart from the applicable guideline range if it finds an aggravating or mitigating circumstance not adequately considered by the Sentencing Commission. 18 U.S.C.A. § 3553(b) (West Supp.1991). The district court's decision to depart upward is viewed

---

4. We note that this case does not involve any first amendment claims concerning the documents seized. *Cf. Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); *United States v. Frederickson,* 846 F.2d 517 (8th Cir.1988).

under an abuse of discretion standard. *United States v. Snover*, 900 F.2d 1207, 1209 (8th Cir.1990) (*Snover*); *United States v. Carey*, 898 F.2d 642, 645 (8th Cir.1990) (*Carey*). A departure from the applicable guideline range is affirmed unless it is "unreasonable." 18 U.S.C.A. § 3742(e) (West Supp.1991). We must accept the district court's findings of fact unless they are clearly erroneous and must give due deference to the district court's application of the guidelines to the facts. *Id.*

■ In applying these standards, our court has adopted the three step analysis of the First Circuit in *United States v. Diaz–Villafane*, 874 F.2d 43, 49–50 (1st Cir.) (*Diaz–Villafane*), cert. denied, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). *United States v. Smith*, 909 F.2d 1164, 1169 (8th Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 691, 112 L.Ed.2d 682 (1991); *United States v. Lang*, 898 F.2d 1378, 1379–80 (8th Cir.1990) (*Lang*). We first review the circumstances relied on by the district court to determine if the case is sufficiently unusual to warrant departure. Second, we examine the district court's findings of fact to determine if the circumstances exist in the present case. The district court's findings of fact may be set aside for clear error only. Lastly, we determine whether the overall sentence is reasonable.

■ In order to review the circumstances relied on by the district court, the district court must provide the specific reasons for its departure. 18 U.S.C.A. § 3553(c) (West Supp.1991). Here, the district court set forth six reasons for its departure. In its judgment, the district court set forth the following reasons for its departure:

1. Defendant's repeated use of the same fraudulent scheme.

2. Defendant has two prior offenses not counted by reason of their age.

3. Defendant has two additional pending fraud charges with warrants outstanding on both.

4. Defendant has a warrant outstanding in connection with a probation violation.

5. Defendant has received in the past only minimal sentences in spite of the repetitive nature of his criminal conduct.

6. Court finds that the trial testimony established that the dollar loss as computed, does not truly reflect the extent of the fraudulent activity, or the harm associated with defendant's conduct.

We agree with the district court that these circumstances take this case outside of the "heartland" of sentencing and justify an upward departure. The district court first relied on the fact that defendant continually, even while on probation for prior fraudulent actions, used the same fraudulent scheme. This court has previously found that repeated commission of the same type of offense was not adequately considered by the guidelines and can justify an upward departure. *See United States v. Perkins*, 929 F.2d 436, 438 (8th Cir.1991). Here, defendant used various false names and social security numbers in various jurisdictions, but the criminal acts are remarkably similar.

The district court's second, third and fourth reasons for upward departure illustrate why defendant's criminal history score does not adequately reflect the seriousness of his prior criminal acts. Once again these circumstances can support an upward departure. *Carey*, 898 F.2d at 645–46. Additionally, the guidelines themselves mention that criminal conduct outside of the time period counted by the guidelines can be used to justify upward departure. U.S.S.G. § 4A1.2, note 8 (1990). Defendant argues that in his case, his criminal history score of thirteen or fourteen points puts him in the low end of Category VI and thus upward departure is unwarranted. Yet the district court set forth a considerable number of offenses which are not counted in defendant's criminal history score and these additional offenses, combined with the other circumstances described, justified the upward departure.

Fifth, the district court pointed to the past leniency received by defendant. Because defendant committed his various offenses in many different jurisdictions and under many different names, the sentencing courts were unaware of his prior criminal behavior. Following one conviction, defendant simply created a new identity and continued his fraudulent activity elsewhere. Once again, this court has accepted past leniency as a circumstance which justifies departure. *Lang*, 898 F.2d at 1380.

Finally, the district court pointed to the harm caused by defendant's conduct which was not adequately reflected in his base offense level. At the sentencing hearing, the district court pointed to falsehoods committed by defendant which were not counted in arriving at the mathematical computation of the dollar loss associated with his conduct, including falsehoods to obtain a driver's license, misuse of a law school student's record, use of false social security numbers, and use of other false information on military discharge papers. Uncharged conduct can be the basis for departure. U.S.S.G. § 1B1.4 (1990); *Snover*, 900 F.2d at 1210.

■ We now move to the second step in the analysis, that is, whether the district court's findings of fact are supported by the evidence. We will only reverse the district court's findings of fact for clear error. The government had the burden of proving the conduct to be considered at sentencing by a preponderance of the evidence. *United States v. Malbrough*, 922 F.2d 458, 464 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991). Defendant disputes a number of the factual findings of the district court. We find defendant's arguments unpersuasive.

Defendant's arguments concern three of the district court's reasons for departure: the prior offenses not counted because of their age, the outstanding fraud charges, and the outstanding warrant. Defendant does admit to some of the charges, for example, defendant admits to passing a bad check in Ohio in 1977. He disputes others. For example, he claims that he was not convicted in 1970 of defrauding an innkeeper in Boston, but instead received a suspended sentence and six months probation. The district court recognized defendant's objection. The district court stated that because this offense was not considered in calculating defendant's criminal history points, it could properly be considered for purposes of upward departure.

■ Defendant also objected to the district court's consideration of one of the outstanding fraud charges, a charge pending in Philadelphia. Defendant claims that he is not the "Nicholas Faison" who committed the offense and that the government has no fingerprint evidence to prove that he is Faison. The district court relied on a photograph taken in Philadelphia as well as the fact that defendant used the same Chicago address used by another alias, Zachary Stearns, his own date of birth, a similar fake social security number, and employed a similar fraudulent scheme. The district court properly relied on this pending charge as a reason for its upward departure. We have similarly reviewed defendant's other factual objections and find them all without merit.

■ Finally, we must determine the overall reasonableness of the district court's sentence. This step is "quintessentially a judgment call," and we should give deference to the district court and respect its "superior 'feel' for the case." *Diaz–Villafane*, 874 F.2d at 49–50. The district court conducted three sentencing hearings following trial, and thus certainly was thoroughly acquainted with the facts of the case. We believe that the district court's decision to depart upward was reasonable. Based upon defendant's record, his continued use of the same fraudulent scheme, his past lenient sentences, and the non-quantifiable harm caused by defendant's conduct in Minnesota, we believe his sentence of thirty-six months imprisonment was reasonable. The sentence was well within the statutory maximum of six years. 18 U.S.C. § 3581(b)(4).

### C. Upward Departure in Term of Supervised Release

█ The district court departed from the guideline supervised release term of two to three years and imposed a term of five years. This departure was based upon the same six circumstances relied on for the imprisonment departure above. Defendant alleges that 18 U.S.C.A. § 3553(b) (West Supp.1991), which allows departures from the sentencing guidelines, does not apply to terms of supervised release. Section 3553(b) provides:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

We agree with the government that the language in this statute is broad enough to cover departures from the guidelines supervised release terms.

Yet the supervised release terms provided for in the sentencing guidelines, U.S.S.G. § 5D1.2 (1990), are identical to the statutory maximums in 18 U.S.C.A. § 3583(b) (West Supp.1991). The district court may not exceed the statutory maximum, which in this case is three years. *Id.* The district court may, if it chooses, impose consecutive terms of supervised release. We therefore vacate the supervised release part of defendant's sentence and remand for resentencing consistent with our opinion.

### D. District Court Determination of Dollar Figure

If the dollar figure associated with defendant's conduct is greater than $2,000, the defendant's base offense level is increased accordingly. U.S.S.G. § 2F1.1 (1990). The district court determined the

dollar figure associated with defendant's conduct to be $8,634.53, of which $6,537.16 was attributed to his account at Norwest Bank. This figure includes the total value of the checks written on defendant's account at Norwest Bank. While some of these checks were returned NSF, $6,045.24 of the checks were covered by Brigid Randall. Defendant alleges that the amount covered by Brigid Randall should be deducted from the district court's determination of the dollar figure associated with his conduct because Norwest Bank did not lose that money.

█ We disagree. The dollar figure associated with defendant's conduct does not hinge upon actual loss. *United States v. Johnson,* 908 F.2d 396, 398 (8th Cir.1990) (*Johnson*). In *Johnson,* this court determined that the defendant's offense level was "to be determined by the total amount of the two bank loans," and was not decreased by the amounts the banks were able to recover by repossessing the defendant's automobile and from one of the bank's insurance companies. *Id.* The dollar figure associated with defendant's conduct should not turn on the fact that Brigid Randall, who worked for Norwest Bank, covered some of his checks. "Rather, the focus for sentencing purposes should be on the amount of the possible loss which [the defendant] attempted to inflict on the banks." *Id.* See U.S.S.G. § 2F1.1, note 7 (1990). We therefore affirm the district court's determination of the dollar figure associated with defendant's conduct and used to increase his base offense level.

### E. Defendant's Rule 41(e) Motion

On February 27, 1991 defendant filed a *pro se* motion pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure for the return of certain property seized during the February 14, 1990, search of his living quarters in Brigid Randall's residence. The motion requested return of both paperwork and personal items.[5] The district

---

**5.** Defendant's Rule 41(e) motion requested the return of the following property:

  a. One brown leather briefcase.

  b. All legal papers, including pleadings, briefs, notes, and other documents.
  c. Red leather address and telephone book of Brigid Randall.

court denied defendant's motion, but as to the personal items,[6] granted leave for defendant to renew his motion if he supplied the government with a verified statement from Brigid Randall that she acquiesced in the return of her personal property.[7] The reason for this requirement was that at least some of the personal items, such as a "red leather address and telephone book of Brigid Randall," belonged to Brigid Randall.

We agree with the district court. The motion for the return of the paperwork, even papers that were not introduced at trial, was premature because defendant's direct appeal was still pending. As to the personal property, there was no abuse of discretion in requiring the real owner of the property, Brigid Randall, to consent to its return to defendant. We therefore affirm the district court's denial of defendant's Rule 41(e) motion.

## III. CONCLUSION

We accordingly hold the district court did not err in denying defendant's motion to suppress evidence seized pursuant to the search warrant. We affirm the district court's sentence with the exception of the five year term of supervised release, vacate the five year term of supervised release, and remand the case for resentencing consistent with this opinion. We hold the district court did not err in denying defendant's Rule 41(e) motion for return of property.

We also deny defendant's motion for leave to file a supplemental *pro se* brief in his direct appeal because he was represented by counsel in that appeal.

d. Blue leather pocket calendar.
e. Red eel-skin wallet.
f. Miscellaneous personal and business papers.

**6.** This includes the briefcase, address and telephone book, pocket calendar, and wallet.

**7.** *United States v. Coleman,* No. 3–90–25 (D.Minn. June 18, 1991) (order denying defendant's Rule 41(e) motion).