UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Russell PASSMORE, also known
as Clifford Parkinson, also known as
Mark Nash, Defendant–Appellant.

No. 92–2448.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1992.

Decided Jan. 28, 1993.

Gordon V. Goodsell, Rapid City, SD, argued, for plaintiff-appellee.

Robert Mandel, Asst. U.S. Atty., Rapid City, SD, argued, for defendant-appellant.

Before McMILLIAN, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The only questions in this appeal are whether the district court improperly (1) departed upwardly from the Federal Sentencing Guidelines because of (a) the defendant's illicit and pernicious relationship with a young girl and (b) the pervasiveness of the defendant's criminal conduct and (2) refused a downward adjustment under the

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting

Guidelines based on the defendant's alleged acceptance of responsibility. We affirm.

I.

A. 1. The background facts as set forth in the presentence report, to which neither the defendant nor the government objected, are as follows:

In 1987, the appellant Passmore, then thirty-two years old, met and became involved with an eleven-year-old girl, P. They lived together for almost a year, regularly having sex. After separating for a time, they resumed their relationship and traveled together to various places in the United States. P had a child by Passmore at the age of fifteen.

To support themselves, they operated at least four fraudulent schemes to obtain money by inducing people to call toll free 800 telephone numbers and send them money for nonexistent merchandise. They operated the first three of these schemes in Colorado, Arkansas and Wyoming. In operating these schemes, Passmore had P answer the telephone as the person operating the business. He also had her open checking accounts in fictitious names and they wrote a number of bad checks.

The fourth scheme, which resulted in Passmore's conviction, occurred in South Dakota. They placed ads in newspapers in Washington, D.C., Dallas and Seattle, offering to sell tickets to professional football games. Callers to the 800 number were told that there were four tickets for a forthcoming game, which would be sold to the first person to submit payment of fifty dollars per ticket by certified check or money order. Forty-seven persons called the 800 number and ordered tickets, totalling $7710. Passmore and P received $3630 from the sale of these fictitious tickets.

2. Passmore was indicted at the United States District Court for the District of South Dakota on fourteen counts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343 (1988). Pursuant to a

by designation.

plea agreement, Passmore pleaded guilty to one count of mail fraud. The district court** sentenced Passmore to thirty-six months imprisonment, followed by three years of supervised release.

B. The presentence report determined that under section 2F1.1(a) of the Guidelines, the base offense level of the crime to which Passmore pleaded guilty (mail fraud) was six, which the report increased by five to reflect the following specific offense characteristics: the monetary amount involved, U.S.S.G. § 2F1.1(b)(1)(D), including money received from similar schemes, U.S.S.G. § 1B1.3, and the facts that the scheme involved more than minimal planning and defrauded more than one victim, U.S.S.G. §§ 2F1.1(b)(2)(A), (B). The presentence report also added two points for obstruction of justice, U.S.S.G. § 3C1.1, and subtracted two points for acceptance of responsibility, U.S.S.G. § 3E1.1(5), which resulted in a total offense level of eleven. This produced a Guideline imprisonment range of eight—fourteen months. The presentence report found no factors that would warrant departure from the Guidelines range.

The district court adopted the presentence report with the following changes:

The court added two points for Passmore's aggravating role in the offense, U.S.S.G. § 3B1.1(c), and did not allow a two-point reduction for acceptance of responsibility. This produced a total offense level of fifteen, with a Guideline range of eighteen—twenty-four months imprisonment.

The court then departed four levels upward pursuant to section 5K2.0 to produce a total offense level of nineteen, with a sentencing range of thirty—thirty-seven months imprisonment. As noted, the court sentenced Passmore to thirty-six months imprisonment.

At the sentencing hearing, the court explained the four level upward departure as follows:

The departure reasons would be generally as follows: first, the Court did consider that [P] was a vulnerable victim and this conduct occurred over many, many months, indeed, years. It was continuing conduct. The defendant—the victim learned much sophistication from the defendant. The Court considers by reason of a long and protracted period of involvement between the defendant and the victim, that this conduct has altered perhaps for years to come the attitude, the morals, indeed the mental attitude of this victim. The conduct took place not only over a period of years, but also over the various states of Colorado, Arkansas, Wyoming, South Dakota, possibly California. The crime itself was a sophisticated type of a crime which involved an intricate plan of deception, which reached victims all over the United States, practically, from coast to coast.

The defendant was 20 years older than the victim, who was 11, going on 12.

The court further stated:

I don't also accept your position that it takes a psychologist or a psychiatrist to come to a conclusion that a young lady who starts at 12 years of age and lives in an illicit relationship with a male who is the father of an unborn child over a period of years in a marriage-type relationship, I don't think you need a psychologist or psychiatrist to say that this will cause some long-term emotional problems with this young lady.

Finally, after imposing sentence, the court stated:

As respects the departure, the Court does want to make one further comment and that is that in addition to the Court's comments concerning the illegal acts of sexual abuse, in this case the defendant also led this young lady into committing criminal acts.

## II.

"The district court may depart from the Guidelines if it finds aggravating or miti-

---

** The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

gating circumstances which are not adequately taken into consideration by the Guidelines, 18 U.S.C. § 3553(b), and it provides the specific reason for the departure. 18 U.S.C. § 3553(c). We review the reasonableness of an upward departure based on circumstances not adequately considered by the Guidelines under an abuse of discretion standard. ... This review is 'quintessentially a judgment call' and we respect the district court's superior 'feel' for the case." *United States v. Perkins*, 929 F.2d 436, 437–38 (8th Cir.1991) (citations omitted).

In this case, the district court departed upwardly by four levels based upon three factors: (1) the illicit sexual relationship between Passmore and P, who was eleven or twelve years old when the relationship began and who became pregnant by him at fifteen; (2) Passmore's inducing P to enter into a life of crime, and having her play a major role in his fraudulent schemes; and (3) the pervasive character of those fraudulent activities.

Passmore challenges the first and third grounds, but does not address the second ground or raise any question regarding its propriety or validity as a basis for an upward departure.

In "review[ing] sentences departing from the Guidelines ... we consider (1) as a question of law, whether the circumstances the district court relied on for departure are sufficiently unusual in kind or degree to warrant departure; (2) as a question of fact, whether the circumstances justifying departure actually exist; and (3) whether or not the sentence is reasonable. ... The 'district court has wide discretion in sentencing and its inquiry is "largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." ' " *United States v. Thomas*, 914 F.2d 139, 143–44 (8th Cir.1990) (citations omitted).

Under those standards, we uphold the district court's four-point upward departure.

A. Passmore challenges the district court's reliance on the adverse psychological effect of his conduct upon P. Primarily, he argues that the record lacks a factual basis for the district court's finding that the conduct had that effect. According to Passmore, the district court could not properly make such a finding without expert psychological evidence that there was that effect.

As the district court pointed out, the record shows that over several years Passmore had an illicit sexual relationship with a young girl—whom it described as a "vulnerable victim"—beginning when she was eleven or twelve. In those circumstances, we agree with the district court's conclusion that "I don't think you need a psychologist or psychiatrist to say that this will cause some long-term emotional problems with this young lady." Expert testimony is not required for the district court in sentencing to recognize such an obvious proposition. *See, e.g., United States v. Astorri*, 923 F.2d 1052, 1059 (3d Cir.1991) (affirming upward departure under U.S.S.G. § 5K2.3 where district court's findings were based on the record and the court's own observations); *United States v. Lucas*, 889 F.2d 697, 701 (6th Cir.1989) (affirming departure for psychological injury to victims based on one victim's testimony, "as well as common sense and experience").

In section 5K2.0, the Commission noted some of the factors that it "has not been able to take into account fully in formulating the guidelines." Thus, "[i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range." U.S.S.G. § 5K2.3, p.s. The district court correctly recognized that this provision does not directly apply in this case, since the "victims" of Passmore's fraudulent schemes were the persons who sent money for the nonexistent football tickets. *See United States v. Hoyungowa*, 930 F.2d 744, 747 (9th Cir.1991) (U.S.S.G. § 5K2.3 "applies by its plain terms only to the direct victim of the crime and not to others affected by the crime"). *But see United States v. Muhammad*, 948 F.2d 1449, 1456 n. 1 (6th Cir.1991), *cert. denied,* — U.S. —, 112

S.Ct. 1239, 117 L.Ed.2d 472 (1992) ("victim" in U.S.S.G. § 2B3.1(b)(3) "include[s] not only the institution of the bank but those persons which are affected by the commission of the crime, including persons harmed in flight."). P was not such a victim.

▪ Section 5K2.3 is pertinent, however, since it shows that psychological injury is a factor that the Commission did not fully consider in the Guidelines, and which, therefore, may justify an upward departure. In the colloquial sense, P certainly was a victim of Passmore's illicit conduct, and in the extraordinary circumstances of this case that factor was "sufficiently unusual in kind or degree to warrant departure" upward. *Thomas,* 914 F.2d at 143.

▪ Passmore relies upon *United States v. Morin,* 935 F.2d 143 (8th Cir.1991), where this court reversed a district court's upward departure based on the psychological harm to the victim on the ground that the psychological harm inflicted had not been shown to exceed that normally suffered by the victim of the type of crime involved. *See also, United States v. Fawbush,* 946 F.2d 584 (8th Cir.1991). Those cases, however, arose under section 5K2.3, which, as discussed above, permits an upward adjustment only for psychological injury "much more serious than that normally resulting from commission of the offense." The rationale of that requirement presumably is that the Commission recognized that all crimes have some psychological effect upon their victims and contemplated an upward departure only if the psychological effect is unusually severe. That requirement is inappropriate in, and should not be applied to, the present case, which involves the unusual and extraordinary circumstances of Passmore's illicit long-term sexual relationship with a young girl who was not the "victim" of the crime under section 5K2.3.

Furthermore, Passmore's corruption of P by inducing her to join him and play a major role in his life of crime was a significant factor that supported the upward departure from the Guidelines. *United States v. Christopher,* 923 F.2d 1545, 1556 (11th Cir.1991) ("Among the factors which warranted an upward departure from the Sentencing Guidelines [is] ... Christopher's apparent willingness to corrupt members of his family, including his own children, by involving them in criminal activities.").

▪ B. Passmore challenges the district court's reliance upon the pervasive nature of his crime on the ground that this factor already was reflected in the computation of the base offense level of fifteen, and that to permit this increased sentence would punish Passmore "twice for the same conduct, once under upward adjustments in the base offense level and once again through upward departure." According to Passmore, the pervasive character of his fraud already has been taken into account in the increase of the base level of his crime to fifteen to reflect his leadership role in the frauds, the monetary gain from them, and the facts that the scheme involved more than minimal planning and more than one victim.

We agree with the district court that the pervasive character of Passmore's crime was a factor not adequately reflected in the foregoing increases in the base level of the offense, and that the court justifiably considered this factor in departing upwardly from the Guidelines. The increases in the base level of the offense did not adequately reflect Passmore's commission of similar frauds in three other states and his solicitation of persons in the eastern, southwestern and northwestern parts of the country to purchase nonexistent football tickets.

▪ C. Passmore apparently does not challenge the reasonableness of the four-point upward departure. The effect of the departure was to increase the Guideline range from eighteen—twenty-four to thirty—thirty-seven months.

Review of the reasonableness of the district court's departure from the Guidelines involves what is quintessentially a judgment call. District courts are in the front lines, sentencing flesh-and-blood defendants. The dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record.

Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior "feel" for the case. We will not lightly disturb decisions to depart.

*United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), *quoted in United States v. Lang,* 898 F.2d 1378, 1380 (8th Cir.1990). Considering all the circumstances of this case, we cannot say that the four-point upward departure or the thirty-six-month sentence imposed as a result thereof was unreasonable, or that the district court abused its discretion in making those adjustments and imposing that sentence.

### III.

■ The presentence report recommended that Passmore's offense level be reduced by two points to reflect his acceptance of responsibility. U.S.S.G. § 3E1.1(a). The district court rejected that recommendation. We review a district court's refusal to grant a reduction of sentence for acceptance of responsibility under the clearly erroneous standard. *United States v. Furlow,* 980 F.2d 476 (8th Cir. 1992) (en banc). As this court stated in *United States v. Allen,* 886 F.2d 143, 146 (8th Cir.1989):

> The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. His decision to depart or not is entitled to a great deference on review, and will not be disturbed unless it is without foundation. Commentary to § 3E1.1, Section 5.

*Id.*

Passmore criticizes the district court for its failure to explain its refusal to follow the presentence report recommendation and contends that without such explanation there is no basis upon which we can uphold the district court's ruling. We disagree.

Passmore originally had pleaded guilty to one count of mail fraud. During the initial sentencing hearing, the court indicated that it intended to depart upwardly from the Guidelines and to deny a reduction in sentence for acceptance of responsibility. At a subsequent motions hearing prior to sentencing, Passmore moved to withdraw his plea, but subsequently sought to withdraw that motion.

Although initially Passmore told that court that the reason he wanted to withdraw his plea was because of the emotional stress he was under when he entered the plea, he then agreed with the court's statement that "[t]he real reason why you wanted to withdraw your plea, then, was not your condition—not the condition which existed on January 27, 1992, at the time you entered your plea, but was after you received word from the Court that the Court was intending to consider a departure upward above the guidelines, isn't that correct?" In granting Passmore's motion to withdraw the motion, the district court found that Passmore "would not have sufficient grounds to withdraw his previous plea of guilty," and that "the reason for the change of mind of the defendant to request that his previous plea of guilty be withdrawn stems from the notice which the Court gave the defendant and his counsel of the Court's intention to depart upward." Passmore's plea remained in effect.

■ Although it would have been better if the district court had explicated the grounds for its denial of a reduction for acceptance of responsibility, we cannot say that that denial was "without foundation." *Allen,* 886 F.2d at 146. Passmore's attempt to withdraw his guilty plea, because of the district court's announcement that it intended to depart upwardly, was inconsistent with the Guidelines' requirement that "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). The guilty plea itself did not entitle Passmore to a reduction in sentence "as a matter of right." U.S.S.G. § 3E1.1(c). "The express language of the guideline and the application note demonstrate that the burden for establishing acceptance of responsibility is on the defendant." *United States v. Morales,* 923 F.2d 621, 628 (8th Cir.1991). The district court's ruling that Passmore had

not demonstrated an acceptance of responsibility for his crime, was not clearly erroneous.

The sentence of the district court is affirmed.

McMILLIAN, Circuit Judge, dissenting.

I agree with most of the majority opinion's analysis. However, for the reasons discussed below, I would reverse the sentence and remand the case to the district court for a statement of its reasons for denying a reduction for acceptance of responsibility and for resentencing.

First, even though the district court recognized that Guidelines § 5K2.3 did not apply to the present case, I think the district court granted the upward departure primarily because it viewed P as a "vulnerable victim" who had suffered extreme psychological injury as a result of her relationship with appellant. The district court repeatedly referred to P as a victim who had been sexually abused, exploited and corrupted by appellant, and this inaccurate characterization of P as a victim clearly influenced the district court's sentencing findings. However, as noted by the district court and by the majority opinion, P was not a "victim" of the offense; the victims of the offense were the disappointed customers.

Even assuming for purposes of analysis that extreme psychological injury to P as a result of the relationship between appellant and P is an aggravating circumstance and therefore relevant under Guidelines § 5K2.0, the district court improperly assumed that the relationship could only have been extremely psychologically damaging to P. This may in fact be correct, but there is no evidence in the record to support this finding. Cf. United States v. Fawbush, 946 F.2d 584, 586 (8th Cir.1991) (requiring evidence of extreme psychological injury under Guidelines § 5K2.3). In addition, I am not willing to speculate that this relationship had an "obvious" and damaging effect on P, particularly in the absence of expert psychological evidence.

However, I agree that the record supports the district court's finding that appellant "corrupted" P by involving her in the fraudulent schemes. Appellant's apparent willingness to enlist and use P to carry out the fraudulent schemes is an aggravating circumstance that was not adequately considered in formulating the Guidelines. Cf. United States v. Christopher, 923 F.2d 1545, 1556 (11th Cir.1991) (father's willingness to involve members of his family, including his children, in criminal activities was aggravating circumstance).

The district court also departed upward on the basis of the "pervasive nature" of the crime. Appellant correctly argues that factors such as his leadership role in the offense, the total amount of the monetary loss, and the fact that the offense involved more than minimal planning and more than one victim were already taken into consideration under the Guidelines as enhancements to the offense level and thus cannot be used to justify an upward departure. However, the district court also found that appellant and P had conducted the same type of fraudulent scheme in four or possibly five states. I agree with the majority opinion that this finding, which is supported by the record, justifies upward departure. The repeated commission of the same type of offense is an aggravating circumstance that was not adequately considered in formulating the Guidelines. See, e.g., United States v. Saunders, 957 F.2d 1488, 1492 (8th Cir.), cert. denied, — U.S. —, 113 S.Ct. 256, 121 L.Ed.2d 187 (1992).

Even though the district court based the upward departure in large part on an invalid reason, the psychological injury to P, I believe the error was harmless. Williams v. United States, — U.S. —, — – —, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) (harmless error analysis under Sentencing Guidelines). I think the district court would have imposed the same sentence absent the invalid factor on the basis of appellant's involving P in criminal activity and the repeated commission of the same type of fraudulent scheme. Each of those factors is substantial in itself. I am also satisfied that the departure of 12 months was reasonable because those factors are sufficient to justify a departure of that magnitude. But for the district court's failure to explain the denial of the

reduction for acceptance of responsibility, I would affirm the sentence.

I recognize that a guilty plea alone does not necessarily warrant a reduction for acceptance of responsibility under Guidelines § 3E1.1 and that granting both an enhancement for obstruction of justice under Guidelines § 3C1.1 and a reduction for acceptance of responsibility would be "extraordinary." Guidelines § 3C1.1, application note 4. In the present case the presentence report recommended both an enhancement for obstruction of justice and a reduction for acceptance of responsibility. Appellant pled guilty in a timely manner and, after some initial missteps, fully cooperated with the authorities. He did attempt to withdraw his guilty plea, but he later withdrew that ill-advised motion. It may be that, as noted by the majority opinion, the district court decided that appellant's abortive attempt to withdraw his guilty plea indicated that he had not genuinely accepted personal responsibility. Nonetheless, I think the district court should state the reason or reasons why it denied the reduction for acceptance of responsibility. It is, after all, not at all uncommon for criminal defendants to react just as appellant did when informed of the possibility of a greater sentence.

For that reason, I would reverse the sentence and remand the case to the district court for a statement of reasons and for resentencing.