UNITED STATES of America, Appellee,

v.

**Roger P. REETZ, Appellant.**

**No. 93–2602.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1993.

Decided March 10, 1994.

596

Counsel who presented argument on behalf of the appellant was Gerald Handley of Kansas City, MO.

Counsel who presented argument on behalf of the appellee was Linda L. Parker, Assistant U.S. Attorney, of Kansas City, MO.

Before MAGILL, Circuit Judge, BRIGHT, Senior Circuit Judge, and VAN SICKLE,* Senior District Judge.

---

* THE HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

MAGILL, Circuit Judge.

Roger P. Reetz appeals his 41–month sentence imposed after he pleaded guilty to five separate crimes. He raises four issues relating to his sentence. Reetz argues that the district court: (1) violated the ex post facto clause by not applying the Sentencing Guidelines in effect at the time he completed his first crime, (2) engaged in double counting by improperly grouping his multiple offenses, (3) improperly refused to grant an "acceptance of responsibility" adjustment to his offense level, and (4) engaged in double counting by enhancing his offense level for both "more than minimal planning" and for "abuse of a position of trust." We affirm in part, reverse in part, and remand to the district court for resentencing.

## I. BACKGROUND

In April 1992, a grand jury indicted Reetz for a mail fraud (Mail Fraud), 18 U.S.C. § 1341 (1988), that occurred in March and April 1989. That conduct consisted of Reetz, in his position as investment advisor, defrauding a client of investment funds. On April 30, 1992, Reetz failed to appear at a show cause hearing regarding the Mail Fraud count. Instead, Reetz used a false passport—which he failed to report and turn over to the court—to exit and re-enter the country. On May 5, 1992, the authorities apprehended Reetz in San Antonio, Texas. After this arrest, Reetz cooperated by giving information to authorities regarding another similar fraud scheme. The government charged Reetz with, and Reetz pleaded guilty to, four additional counts: failure to appear (Failure to Appear); contempt of court (Contempt of Court), based on false statements made to the court regarding his passport; use of a false passport (Use of a False Passport); and interstate transportation of stolen money (Transport of Stolen Money). The Transport of Stolen Money count stemmed

from conduct that occurred from March 1989 through at least January 1990 and involved Reetz absconding with the assets of another one of his clients.

On June 11, 1993, the district court sentenced Reetz, using the Sentencing Guidelines that took effect on November 31, 1992. The district court grouped the five counts into two separate sentencing groups. The first group consisted of the Mail Fraud, Transport of Stolen Money, and Failure to Appear counts. The second group consisted of the Contempt of Court and Use of a False Passport counts. The district court denied Reetz's request for a downward adjustment for acceptance of responsibility and enhanced Reetz's offense level for both "more than minimal planning" and "abuse of a position of trust." Reetz timely appealed.

## II. DISCUSSION

### A. Violation of Ex Post Facto Clause

Reetz argues that the district court should have applied the 1988 Sentencing Guidelines, which were in effect when he completed his Mail Fraud count.[1] Reetz contends that application of the more punitive Sentencing Guidelines amended in November 1989 to his Mail Fraud count, which he completed in April 1989, violates the ex post facto clause. *See United States v. Bell*, 991 F.2d 1445, 1452 (8th Cir.1993); *accord United States v. Swanger*, 919 F.2d 94 (8th Cir.1990).

This court has determined that the guidelines are laws subject to the limitations of the ex post facto clause. *Bell*, 991 F.2d at 1449–52. Normally, a court should apply the guidelines in effect at the time of sentencing unless doing so would violate the ex post facto clause. *United States v. Seligsohn*, 981 F.2d 1418, 1424 (3d Cir.1992). A violation of the ex post facto clause occurs, however, "if a defendant is sentenced under the Guidelines in effect at the time of sentencing when those

---

1. The district court applied the guidelines that took effect in November 1992. The only difference, applicable to Reetz's sentence, between the November 1992 guidelines and the 1988 guidelines is § 2F1.1(b)(1). The Sentencing Commission amended this section in November 1989, and that version, as it would apply to Reetz, has not changed since. The relevant inquiry, there-

fore, is whether the district court, consistent with the ex post facto clause, could have properly applied the November 1989 guidelines to Reetz's conduct; if so, application of the November 1992 guidelines also would be proper because there are no material differences, as applied to Reetz, between the November 1989 and November 1992 guidelines.

Guidelines produce a sentence harsher than one permitted under the Guidelines in effect at the time the crime is committed." *Bell,* 991 F.2d at 1452.

 Some offenses, such as conspiracy, are "continuing offenses" for which the completion date controls which version of the Sentencing Guidelines should apply. *Seligsohn,* 981 F.2d at 1425; *see United States v. Allen,* 886 F.2d 143, 145–46 (8th Cir.1989). A "common scheme or plan" by an individual and the "same course of conduct" by an individual are the unilateral equivalents to the continuing group offense of conspiracy. *Cf. United States v. White,* 888 F.2d 490, 500 (7th Cir.1989) (describing single course of conduct as the unilateral equivalent to the conspiracy). We must decide whether the Mail Fraud and Transport of Stolen Money counts constitute a common scheme or plan or the same course of conduct for which the completion date extends past the effective date of the November 1989 guidelines.

 The Sentencing Guidelines define "common scheme or plan" as two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*" U.S.S.G. § 1B1.3, comment. (n. 9(A)) (1992).[2] Reetz's Mail Fraud and Transport of Stolen Money counts both involved his conduct as an investment advisor in which he created bogus investment schemes to defraud his clients of money. These two counts had the common purpose of defrauding Reetz's clients of money, and both counts involved a similar *modus operandi. See id.* We conclude that these two offenses constituted a common scheme or plan. As a result, the completion date for

these two counts—January 1990—post-dates the effective date of the November 1989 guidelines. Therefore, the district court's application of the guidelines in effect at the time of sentencing did not violate the ex post facto clause. *See Allen,* 886 F.2d at 146.

## B. Double Counting of Similar Conduct

At sentencing, the district court separated the five counts into two sentencing groups, determined the offense level for each group, and then determined the overall offense level for both groups combined. Reetz argues that the district court improperly failed to group together his Failure to Appear, Contempt of Court, and Use of a False Passport counts, and this improper grouping resulted in impermissible double counting.[3] The government argues that although the three counts "all relate generally to the defendant's conduct in jumping his bond, they do not involve substantially the same harm within the meaning of § 3D1.2." Appellee's Br. at 15–16.

Part D of Chapter 3 of the guidelines governs grouping of counts for sentencing. The purpose of Part D is to "provide incremental punishment for significant additional criminal conduct," U.S.S.G. Ch. 3, Pt. D (Nov. 1992), and to avoid double counting when offenses "are so closely intertwined with other offenses that conviction for them ordinarily would not warrant increasing the guideline range," *id.* Part D "limit[s] the significance of the formal charging decision and ... prevent[s] multiple punishment for substantially identical offense conduct." *Id.; see also United States v. Rugh,* 968 F.2d 750, 755 (8th Cir.1992) ("Section 3D1.2 ... groups certain offenses for sentencing purposes in order to prevent multiple punishment for substantially similar conduct."). The district

---

**2.** The guidelines also define the "same course of conduct" as offenses that are "sufficiently connected ... as to warrant the conclusion that they are part of a[n] ... ongoing series of offenses." *Id.* § 1B1.3, comment. (n. 9(B)). The 1992 amendment to the guidelines clarified the definition of "common scheme or plan" and "same course of conduct." *See* U.S.S.G.App. C, amendment 439, at 264 (1992).

**3.** Specifically, the double counting to which Reetz refers is the district court's calculation of his overall offense level under § 3D1.4 ("*Deter-*

*mining the Combined Offense Level* "). Because the district court did not combine the Failure to Appear, Contempt of Court, and Use of a False Passport counts, Reetz had two sentencing groups and "two units" under § 3D1.4(a). Application of § 3D1.4(a) to these two groups resulted in a two-level enhancement in Reetz's overall offense level. If the district court had grouped all five counts together, Reetz would not have received this additional two-level enhancement. *See id.*

court applies Part D to "determin[e] a single offense level that encompasses all the counts of which the defendant is convicted. The single, 'combined' offense level that results ... is used ... to determine the sentence." U.S.S.G. Ch. 3, Pt. D, intro. comment. (Nov. 1992).[4]

 This court reviews the district court's grouping of offenses for sentencing de novo. *Rugh*, 968 F.2d at 755. The procedure at issue is the district court's application of § 3D1.2. Section 3D1.2 requires that "[a]ll counts involving substantially the same harm *shall* be grouped together into a single Group." U.S.S.G. § 3D1.2 (Nov. 1992) (emphasis added). Section 3D1.2 defines four instances in which counts involve substantially the same harm. *Id.* § 3D1.2(a)–(d) (Nov. 1992). Subsection b states that separate counts constitute substantially the same harm "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." *Id.* § 3D1.2(b) (Nov. 1992). Section 3D1.2's language is mandatory, and its commentary envisions that in some cases the district court must apply several of § 3D1.2's subsections. U.S.S.G. § 3D1.2 & comment. (n.7) (Nov. 1992).

The district court grouped together, without objection from the government, Reetz's Contempt of Court and Use of a False Passport counts because they were connected by a common criminal objective. The government acknowledges that the Failure to Appear, Contempt of Court, and Use of a False Passport counts "all relate generally to defendant's conduct in jumping his bond." Appellee's Br. at 16. Because the government failed to object to any distinction between the three counts based on the victim of the crime,[5] we conclude that the Contempt of Court, Use of a False Passport, and Failure to Appear counts all involve substantially the same harm under § 3D1.2(b).[6]

Therefore, we hold that the district court improperly failed to group the Contempt of Court, Failure to Appear, and Use of a False Passport counts together.[7]

## C. Refusal to Grant "Acceptance of Responsibility" Adjustment

Reetz argues that the district court committed reversible error when it failed to grant an "acceptance of responsibility" adjustment to his offense level. Reetz argues that he pleaded guilty and cooperated by meeting "with government and private attorneys in an attempt to aid in the recovery of funds for the victims." Appellant's Br. at 12; *see also* U.S.S.G. § 3E1.1 (Nov. 1992).

---

**4.** The procedure for determining an overall offense level under Part D is outlined in § 3D1.1. Section 3D1.1 requires that the district court (1) group the counts into groups of closely related counts (§ 3D1.2), (2) determine the offense level applicable to each group (§ 3D1.3), and (3) determine the combined offense level applicable to all of the groups (§ 3D1.4).

**5.** Arguably, the Contempt of Court and Use of a False Passport counts do not involve the same victim. The victim of the Contempt of Court and Failure to Appear counts is the court. The Use of a False Passport count arguably could have a different government branch as a victim, but the government never raised this distinction at sentencing in reference to the district court's grouping of the Contempt of Court and Use of a False Passport counts. Therefore, we decline to address whether the Use of a False Passport count involves a victim other than the court.

**6.** Grouping these three counts together would result in one sentencing group consisting of all the five counts to which Reetz pleaded guilty. This is consistent with the commentary to

§ 3D1.2. "[A] Group may consist of a single count; conversely, all counts may form a single Group." *Id.* comment. (n. 7).

**7.** At oral argument, the government contended that grouping these three offenses together would prevent the district court from enhancing Reetz's offense level for the Mail Fraud count with his Failure to Appear count pursuant to Application Note 3 to § 2J1.6. *See United States v. Lincoln*, 956 F.2d 1465, 1470 (8th Cir.1992) (stating that "beyond question ... an obstruction offense may be grouped with another offense if the former represented an attempt to impede the course of justice in the latter"); *see also* U.S.S.G. § 2J1.6, comment. (n. 3). This argument assumes that the district court would not group the Failure to Appear count and the underlying Mail Fraud count together in the same sentencing group. Our holding, however, requires that the district court group together all of Reetz's five counts in one sentencing group. Thus, the government's contention is without merit.

This court will reverse a district court's denial of an acceptance of responsibility adjustment only if it is clearly erroneous. *United States v. Furlow*, 980 F.2d 476, 476 (8th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 2353, 124 L.Ed.2d 261 (1993). "[T]he district court is in a unique position to evaluate a defendant's acceptance of responsibility." *Id.* The facts of this case, including Reetz's flight from custody, support the district court's decision to deny the "acceptance of responsibility" adjustment. Therefore, we hold that the district court's denial of Reetz's adjustment for acceptance of responsibility is not clearly erroneous.

### D. Two–Fold Enhancement as Double Counting

Reetz argues that imposition of an enhancement for both "more than minimal planning" and "abuse of a position of trust" resulted in impermissible double counting.[8] We disagree.

This court reviews the district court's application of the scope of the Sentencing Guidelines de novo. *United States v. Werlinger*, 894 F.2d 1015, 1016 (8th Cir. 1989).[9] This court has upheld an enhancement for both "more than minimal planning" and "position of leadership." *United States v. Willis*, 997 F.2d 407, 418–19 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994). The *Willis* court determined that application of both enhancements did not constitute "double counting" because

"[t]he two sections consider different aspects of the defendant's conduct." *Id.* at 419. The enhancement for more than minimal planning "increases punishment where the defendant's crime evidenced planning and forethought, showing a disregard for the rule of law," *id.;* the enhancement for leadership position "recognizes the additional culpability that a defendant should bear for being a leader or organizer of a criminal activity," *id.*

Applying the *Willis* court's analysis to Reetz's double-counting claim results in our concluding that the district court properly enhanced Reetz's sentence for both "more than minimal planning" and "abuse of a position of trust." The concern behind the "abuse of a position of trust" enhancement focuses on the relationship between the defendant and his victims. This concern differs from the concern behind the "more than minimal planning" enhancement. Thus, application of both enhancements does not result in impermissible double counting. *Cf. Willis*, 997 F.2d at 419.[10] Therefore, we hold that the district court properly could enhance Reetz's offense level for both "more than minimal planning" and for "abuse of a position of trust."[11]

### III. CONCLUSION

Accordingly, we affirm in part, reverse in part, and remand for resentencing.

---

8. Reetz does not argue that there was insufficient evidence to support either enhancement. Rather, Reetz argues that the district court cannot apply simultaneously both enhancements.

9. To the extent that Reetz relies on *Werlinger* to support his double-counting argument, his reliance is misplaced. In *Werlinger*, this court held that a district court improperly enhanced defendant's sentence for obstruction of justice through acts of concealment where those acts were coterminous with the conduct that was the basis for the underlying crime of embezzlement. *See United States v. Olunloyo*, 10 F.3d 578, 581 (8th Cir.1993); *United States v. Ransom*, 9 F.3d 707, 708 (8th Cir.1993) (per curiam). However, if a defendant abuses a position of trust, it does not follow necessarily that the defendant also engaged in more than minimal planning, *see infra* note 10; thus, *Werlinger* is inapplicable.

10. At sentencing, the government gave an example of how a criminal could abuse a position of trust with no more than minimal planning: An investment advisor could receive a check from a client, have a sudden "Big Mac Attack," and decide to cash the check and spend it at McDonald's. A district court properly could enhance defendant's offense level for abuse of a position of trust, but should not enhance defendant's offense level for more than minimal planning.

11. We note that this conclusion is consistent with that of three other circuits allowing enhancement for both more than minimal planning and abuse of a position of trust. *See United States v. Christiansen*, 958 F.2d 285, 288 (9th Cir.1992); *United States v. Marsh*, 955 F.2d 170, 171 (2d Cir.1992); *United States v. Georgiadis*, 933 F.2d 1219, 1225–27 (3d Cir.1991).