UNITED STATES of America, Appellant,

v.

Tyrone G. COOPER, Appellee.

No. 92–3501.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1993.

Decided Aug. 29, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 26, 1994.

Lee Lawless, St. Louis, MO, argued, for appellant.

Suzanne Modlin, St. Louis, MO, argued (Stephen B. Higgins and Joseph M. Landolt, St. Louis, MO, on the brief), for appellee.

Before WOLLMAN and LOKEN, Circuit Judges and HUNTER,* Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

On March 5, 1992, Tyrone Cooper was charged in a four count indictment for various firearm violations. On July 16, 1992, pursuant to a plea agreement, Cooper pled guilty to Counts I, II and IV. Count III was dismissed. Count I charged Cooper with being a felon in possession of a firearm on August 24, 1991, in violation of 18 U.S.C.

§ 922(g)(1); Count II charged Cooper with possession of a short-barrelled shotgun on September 24, 1991, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871; and Count IV charged Cooper with being a felon in possession of three separate firearms on January 23, 1992, again in violation of 18 U.S.C. § 922(g)(1).

The district court sentenced Cooper on all three counts under the United States Sentencing Guidelines, as amended November 1, 1991.[1] Cooper objected to application of the November 1, 1991, version of the Sentencing Guidelines to the crimes charged in Counts I and II, on the basis that the offense conduct charged in these two counts occurred prior to the effective date of the amendments. He contends that he should have been sentenced under the Sentencing Guidelines in effect prior to the 1991 amendments. The 1991 amendments generally increased the offense levels for the firearms crimes charged in Counts I, II and IV. Specifically, the base offense levels for violations of 18 U.S.C. § 922(g)(1) and 26 U.S.C. § 5861(d) were increased, and the grouping rules for multiple violations of these firearm statutes were changed to require the sentencing court to adjust the offense level in consideration of the total aggregated amount of harm or loss, which in the instant case would require the court to combine the total number of firearms involved in all three counts.

On appeal, Cooper complains that: (1) application of the Sentencing Guidelines, as amended November 1, 1991, to the offenses committed prior to the effective date of the amendments violates the ex post facto clause of the United States Constitution;[2] (2) the district court misapplied the Sentencing Guidelines in its determination of the total number of weapons involved for sentencing purposes; and (3) the November 1991 amendments to § 2K2.1 of the Sentencing Guidelines were promulgated in violation of the enabling legislation and Congressional intent. We disagree and therefore **AFFIRM** the district court.

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. When used in this opinion, United States Sentencing Guidelines, Sentencing Guidelines and Guidelines are synonymous.

2. "No Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.

## I.

 This court has previously determined that the Sentencing Guidelines are subject to the ex post facto clause of the United States Constitution. *United States v. Bell,* 991 F.2d 1445, 1449–52 (8th Cir.1993). Generally, the sentencing court should apply the Sentencing Guidelines in effect at the time of sentencing unless doing so is violative of the ex post facto clause. *United States v. Reetz,* 18 F.3d 595, 597 (8th Cir.1994) (citation omitted). The ex post facto clause proscribes application of a law that changes punishment in a manner that inflicts greater punishment than the law annexed to the crime at the time of its commission. *Calder v. Bull,* 3 U.S.(3 Dall.) 386, 390, 1 L.Ed. 648 (1798).

 The Supreme Court has set out a two pronged test to determine whether a criminal law falls within the ex post facto prohibition of the Constitution: (1) it must apply to events that occurred before its enactment; (2) it must disadvantage the affected offender. *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (citing *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). "[C]entral to the ex post facto prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" *Id.* (quoting *Weaver,* 450 U.S. at 30, 101 S.Ct. at 965). The ex post facto clause makes sure that "legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver,* 450 U.S. at 28–29, 101 S.Ct. at 964.

In this case, on August 24, 1991, Cooper committed the firearm violation charged in Count I. On September 24, 1991, he committed a second firearm violation charged in Count II. And on January 23, 1992, he committed the third violation, involving multiple firearms, charged in Count IV. At the time Cooper elected to commit the third firearms violation he was clearly on notice of the 1991 amendments to the Sentencing Guidelines and the fact that they increased the offense levels for the firearm crimes in question and required the aggregation of firearms in Counts I, II and IV. In our view, Cooper had fair warning that commission of the January 23, 1992, firearm crime was governed by the 1991 amendments that provided for increased offense levels and new grouping rules that considered the aggregate amount of harm. Utilizing the *Miller* analysis, it was not the amendments to the Sentencing Guidelines that disadvantaged Cooper, it was his election to continue his criminal activity after the 1991 amendments became effective. Cooper could have easily avoided coming under the amended Sentencing Guidelines by desisting in his repeated criminal possession of firearms prior to November 1, 1991.

In support of his position, Cooper cites a number of cases from this Circuit.[3] On the basis of this authority, Cooper urges that a violation of the ex post facto clause occurs if a defendant is sentenced under the Sentencing Guidelines in effect at the time of sentencing and application of those Sentencing Guidelines produces a harsher sentence than would have been permitted under the Sentencing Guidelines in effect at the time the crime was committed. *See, e.g., Bell,* 991 F.2d at 1452. Of course, this proposition is true in the context of the cited authorities. These cases, however, involved convictions for a single offense or convictions for multiple offenses all of which were completed prior to the effective date of the Sentencing Guidelines in question. Such is not the case here. The instant case involves a series of three firearm offenses: two that were committed prior to the effective date of the Sentencing Guidelines in question; and one that was committed after the effective date of the Sentencing Guidelines in question. As such, the authority cited by Cooper is inapposite in this case.

---

**3.** *United States v. Bell,* 991 F.2d 1445, 1452 (8th Cir.1993), *aff'g* 788 F.Supp. 413, 415 (N.D.Ia. 1992); *United States v. Estrada,* 965 F.2d 651 (8th Cir.1992); *United States v. Lenfesty,* 923 F.2d 1293, 1299 (8th Cir.), *cert. denied sub nom. Smith v. United States,* 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991); *United States v. Swanger,* 919 F.2d 94, 95 (8th Cir.1990); *United States v. Vastelica,* 751 F.Supp. 803, 805, 805–06 (E.D.Ark.1990); *see also United States v. Harotunian,* 920 F.2d 1040, 1042 (1st Cir.1991).

This court's ex post facto-Guidelines jurisprudence has recognized a distinction between the application of a particular version of the Sentencing Guidelines to offense conduct occurring exclusively before the effective date of that version of the Sentencing Guidelines and application to an offense or offenses whose conduct occurs both before and after the version's effective date. The former implicates the ex post facto clause, the latter does not.

■ It is well settled that habitual offender statutes do not offend the ex post facto clause, even though such statutes impact imposition of an instant sentence in consideration of past criminal conduct. *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948). This is so because the enhanced sentence is considered to impose a stiffer penalty for the latest crime, which is considered to be an aggravated offense due to its repetitive nature. *Id.* Likewise, "[i]t is well established that a statute increasing a penalty with respect to a criminal conspiracy which commenced prior to, but was continued beyond the effective date of the statute, is not ex post facto as to that crime." *United States v. Campanale*, 518 F.2d 352, 365 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). Similarly, it has been held that applying the Sentencing Guidelines to a conspiracy that straddles the Sentencing Guidelines' effective date is not violative of the ex post facto clause. *United States v. White*, 869 F.2d 822, 826 (5th Cir.), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *see also United States v. Stewart*, 878 F.2d 256, 259 (8th Cir.1989). We have noted that with conspiracy and other continuing offenses it is the completion date of the offense that controls the version of the Sentencing Guidelines to be applied. *United States v. Reetz*, 18 F.3d 595, 598 (8th Cir. 1994). We have also noted that a " 'common scheme or plan' by an individual and the 'same course of conduct' by an individual are the unilateral equivalents to the continuing group offense of conspiracy." *Id.* (citation omitted).[4] As such, the date the crimes are completed determines the version of the Sentencing Guidelines to be applied.

■ We think the logic of this approach applies to the instant case. The offense conduct to which Cooper pled guilty involved a series of firearm offenses spanning from August 24, 1991, to January 23, 1992. As with the analogous cases referenced above, application of the Sentencing Guidelines in effect at the time Cooper completed the last offense does not violate the ex post facto clause.

As noted above, the sentencing court should apply the Sentencing Guidelines in effect at the time of sentencing unless the court determines that such application would

---

4. In its brief, the government suggests that Cooper in, committing the three firearm offenses, engaged in a "continuous course of conduct." The November 1, 1991, Sentencing Guidelines considered as relevant conduct, in determining the appropriate offense level, conduct deemed to be part of a "common scheme or plan" or part of the "same course of conduct." U.S.S.G. § 1B1.3(a)(3) (Nov. 1, 1991). As previously noted by this court, the 1992 amendments to the Guidelines clarified the definitions of "common scheme or plan" and "same course of conduct." *See United States v. Reetz*, 18 F.3d 595, 598 n. 3 (8th Cir.1994). As reflected in the clarifying amendments:

"*Common scheme or plan*" and "*same course of conduct*" are two closely related concepts.

*(A) Common scheme or plan.* For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.
. . .

*(B) Same course of conduct.* Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other . . . include the degree of similarity of the offenses and the time interval between the offenses.

U.S.S.G. § 1B1.3, comment. (n.9) (effective date Nov. 1, 1992).

With this understanding, we think the record supports a finding that Cooper's series of three felony firearms offenses spanning the course of approximately four months could meet one or both definitions. Certainly, the nature of the offenses admits a degree of similarity that, along with close proximity to each other in terms of time, supports the conclusion that the offenses were part of the same or continuing course of conduct.

violate the ex post facto clause. Our view, as expressed today, is that in the context of this case the revised version of the Sentencing Guidelines should be applied to the series of firearm offenses committed by Cooper—the first having been committed before, and the last having been committed after the effective date of a Sentencing Guidelines revision—even though such application results in an increased penalty. To hold otherwise could lead to the anomalous result that a particular defendant could be subject to a lower sentence if convicted of multiple offenses spanning a revision of the Sentencing Guidelines, than if convicted of the singular last offense after the revision of the Sentencing Guidelines.[5]

■ Review of the current Sentencing Guidelines buttresses our conclusion. Presently the Sentencing Guidelines provide that the sentencing court shall apply the Sentencing Guidelines in effect on the date that the defendant is sentenced, unless to do so would violate the ex post facto clause of the Constitution. U.S.S.G. § 1B1.11(a) & (b)(1). Section 1B1.11(a) provides that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). Section 1B1.11(b)(1) adds that

> [i]f the court determines that use of the Guidelines Manual in effect on the date the defendant is sentenced could violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

U.S.S.G. § 1B1.11(b)(1). While these provisions were not contained in either the 1990 or 1991 version of the Sentencing Guidelines, in our view they do not amount to a substantive change in the law; rather, they merely restate and clarify the existing law.[6] Also of interest is the ex post facto discussion and analysis contained in the Commentary to U.S.S.G. § 1B1.11, which supports this court's view regarding whether application of the November 1, 1991, Sentencing Guidelines in the instant case offends ex post facto concerns.[7]

---

**5.** A defendant that pleads guilty to or is convicted of a single offense after the effective date of the relevant version of the Sentencing Guidelines will be sentenced under that version of the Sentencing Guidelines. Under the Sentencing Guidelines, the court may consider relevant conduct such as related offenses that occurred before the effective date of the applicable version of the Sentencing Guidelines that were not charged.

Under Cooper's theory, a defendant charged and convicted of the earlier related offenses would have to be sentenced under an earlier version of the Sentencing Guidelines if such version was more lenient. As such, the defendant convicted of multiple offenses would receive a more favorable sentence than the defendant convicted of a single count. We do not believe Congress intended, nor do we believe that the law compels such a result. *See also* discussion of Sentencing Guidelines commentary at n. 7, *infra.*

**6.** These provisions do not declare a change of the substantive law. On the contrary, section 3553 of Title 18, United States Code, enacted by Congress in 1984 and amended in 1986, 1987 and 1988 provides that the sentencing court is to apply the guidelines and policy statements in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4) and (b). While Congress admitted no exception to imposing sentence pursuant to the Sentencing Guidelines in effect at the time of sentencing, the courts have modified the command when the ex post facto clause is implicated. *See, e.g., United States v. Harotunian,* 920 F.2d 1040, 1041–42 (1st Cir.1990). If the court

determines that application of the existing Sentencing Guidelines would result in an ex post facto violation, the court should apply the Sentencing Guidelines in effect at the time of the offense. *See id.* at 1042.

**7.** The court finds the commentary especially persuasive. Again, the cited Commentary is not a substantive change in any law. It is merely a lucid, and in our view persuasive, analysis of ex post facto considerations as related to the application of the Sentencing Guidelines. In pertinent part, the commentary provides:

> *[W]here the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses, even if the revised edition results in an increased penalty for the first offense. Because the defendant completed the second offense after the amendment to the guidelines took effect, the ex post facto clause does not prevent determining the sentence for that count based on the amended guidelines. For example, if a defendant pleads guilty to a single count of embezzlement that occurred after the most recent edition of the Guidelines Manual became effective, the guideline range applicable in sentencing will encompass any relevant conduct (e.g., related embezzlement offenses that may have occurred prior to the effective date of the guideline amendments) for the offense of conviction. The same would be true for a defendant convicted of*

For the aforementioned reasons, we hold that the district court appropriately applied the November 1, 1991, Sentencing Guidelines.

## II.

As his second point on appeal, Cooper urges that the district court misapplied the Sentencing Guidelines because it failed to take evidence and make explicit findings regarding the aggregate number of firearms involved for purposes of determining the appropriate offense level. Five firearms were implicated in the three counts to which Cooper pled guilty. In so pleading, he admitted to at least these five firearms. For purposes of sentencing, the presentence report indicated that Cooper possessed seven firearms. Cooper objected to the inclusion of firearms from the offenses that occurred prior to November 1, 1991, and also to the inclusion of firearms derived from uncharged conduct. On appeal, he argues that it was error for the court to rely on the presentence report assertion that seven firearms were involved without taking additional evidence and making explicit factual findings.

■ Cooper's first contention that the firearms from the pre-November 1, 1991, counts should not be included is disposed of by our determination above that the November 1, 1991, Sentencing Guidelines were appropriately applied by the district court. Cooper's further contention that the district court erroneously relied on the presentence report to aggregate seven firearms, two derived from uncharged conduct, for sentencing purposes is also without merit. First, the record does not support Cooper's contention that the sentencing court considered the uncharged firearms in determining the appropriate sentencing level. While the presentence report did reflect that Cooper possessed two additional firearms beyond the five charged in Counts I, II and IV, that fact is of no particular moment in determining the appropriate sentence. The district court applied a two-level upward adjustment for the number of firearms. Review of the applicable Sentencing Guidelines section admits that a two-level upward adjustment is called for when the number of firearms involved is between five and seven.[8] As noted above, by his plea Cooper admitted to five of the seven firearms referenced in the presentence report. As such, the record clearly supports a finding by the district court that either five or between five and seven firearms were involved. A more specific finding was not required for sentencing purposes.

For the aforementioned reasons, we find no error in the district court's application of the Sentencing Guidelines regarding the number of firearms involved.

## III.

Finally, Cooper complains that the district court erred by failing to find that the November 1, 1991, amendment to § 2K2.1 of the Sentencing Guidelines was promulgated in violation of the enabling legislation and Congressional intent. Specifically, Cooper contends that the amendment is invalid because it violates 28 U.S.C. § 991(b)(1)(B)'s directive that unwarranted sentencing disparities are to be avoided in the sentencing of defendants with similar records who have been found

---

*two counts of embezzlement, one committed before the amendments were enacted, and the second after. In this example, the ex post facto clause would not bar application of the amended guideline to the first conviction; a contrary conclusion would mean that such defendant was subject to a lower guideline range than if convicted only of the second offense....*

*Moreover, [this approach] ... should be followed regardless of whether the offenses of conviction are the type in which the conduct is grouped.... The ex post facto clause does not distinguish between groupable and nongroupable offenses, and unless that clause would be violated, Congress' directive to apply the sentencing guidelines in effect at the time of the sentencing must be followed....*

U.S.S.G. § 1B1.11, comment. (n.2) (backg'd.).

**8.** Section 2K2.1(b)(1) of the November 1, 1991, Sentencing Guidelines provided:

(b) Specific Offense Characteristics
(1) If the offense involved three or more firearms, increase as follows:

| Number of Firearms | Increase in Level |
|---|---|
| (A) 3–4 | add 1 |
| (B) 5–7 | add 2 |
| (C) 8–12 | add 3 |
| (D) 13–24 | add 4 |
| (E) 25–49 | add 5 |
| (F) 50 or more | add 6. |

U.S.S.G. § 2K2.1(b)(1) (Nov. 1, 1991).

guilty of similar criminal conduct. He supports his contention by further arguing that the Commission failed to supply a reasoned explanation to justify the amendment. Simply put, we find this argument to be without merit.

■ The mere fact that § 2K2.1, as amended, creates some disparity in sentencing as between defendants with similar records who commit certain firearm offenses prior to the amendment's effective date and those who commit similar offenses after the amendment's effective date is of no consequence. Such disparity in and of itself does not violate Congress' intent, as expressed in 28 U.S.C. § 991(b)(1)(B). Section 991(b)(1)(B) provides, in pertinent part, that:

> The purposes of the United States Sentencing Commission [include] ... to establish sentencing policies and practices for the Federal Criminal System that ... provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct....

28 U.S.C. § 991(1)(b)(B). While Congress expressed a desire to avoid *unwarranted* disparities in sentencing, and, to be sure, the amendment in question did have the effect of increasing the penalties for certain firearm offenses, we believe Cooper reads too much into this provision. Congress surely envisioned changes to the Sentencing Guidelines that would increase or enhance the penalties for certain offenses.

■ Congress, among other things, explicitly directed the Sentencing Commission to periodically review and revise the Sentencing Guidelines. 28 U.S.C. § 994(*o*). Reading the statute in its entirety makes it abundantly clear that Congress authorized and envisioned that such periodic revisions could be either upward or downward.[9] To interpret the statute otherwise, would render a substantial portion of the Commission's statutory duties completely superfluous.[10]

■ Cooper finally argues that in promulgating the amendment in question, the Commission acted arbitrarily and capriciously because it did not supply a sufficient explanation for the amendment. Guideline amendments submitted to Congress by the Commission are to be accompanied by a statement of reasons for the changes. 28 U.S.C. § 994(p). In explaining the amendment in question here, the Commission offers that the

> amendment consolidates three firearm guidelines and revises the adjustments and offense levels to more adequately reflect the seriousness of such conduct, including enhancements for defendants previously convicted of felony crimes of violence or controlled substance offenses.... **The effective date of this amendment is November 1, 1991.**

U.S.S.G. App. C, Amend. 374 (1991). We believe the Commission's reasons articulated above are sufficient to meet the requirements of 28 U.S.C. § 994(p).

Even if we agreed with Cooper that the above-stated reasons were not sufficient, it is questionable whether this court has jurisdiction to review the manner in which the Commission promulgates its revisions to the Sentencing Guidelines. The Supreme Court has previously observed that Congress reserved the authority to revoke or amend any of the Sentencing Guidelines within a six month period after their promulgation. *Mistretta v. United States*, 488 U.S. 361, 393–94, 109 S.Ct. 647, 665–66, 102 L.Ed.2d 714 (1989);

---

**9.** The Sentencing Reform Act is replete with references that when read in concert demonstrate that Congress intended periodic review of the Sentencing Guidelines, which could include upward revisions in sentence. One of the purposes of the Commission is to "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process." 28 U.S.C. § 991(b)(1)(C). Section 994, among other things, charges the Commission with the responsibility to: "periodically review and revise, in consideration of comments and data coming to its attention, the guide-

lines...." 28 U.S.C. § 994(*o*). Further, the Commission is to periodically "submit to Congress amendments to the guidelines and modifications to previously submitted amendments that have not taken effect...." 28 U.S.C. § 994(p). Such proposed revisions automatically take affect unless modified or rejected by Congress. *Id.* Other provisions specifically reference the Commission's authority to raise or lower or otherwise adjust penalties for offenses. *See* 28 U.S.C. § 994(r)(s).

**10.** *See id.*

*see also* 28 U.S.C. § 994(p). As such, the Commission is directly accountable to Congress. *Id.* Furthermore, while Congress has subjected the promulgation of original and revised Sentencing Guidelines to the Administrative Procedure Act's (APA) notice and comment requirements, Congress did not subject the Commission's process to any further provision of the APA, including the provisions for judicial review. 28 U.S.C. § 994(x)[11]. On this basis, the District of Columbia Court of Appeals has held that courts lack the authority to review the adequacy of the Commission's articulated reasons given in support of a particular Sentencing Guidelines section. *See, United States v. Lopez,* 938 F.2d 1293, 1297 (D.C.Cir.1991).

For the aforementioned reasons, we find no error on the part of the district court in refusing to find that the November 1, 1991, amendments to § 2K2.1 of the Sentencing Guidelines were promulgated in violation the enabling legislation or congressional intent.

### CONCLUSION

Finding that the November 1, 1991, version of the Sentencing Guidelines applied to Cooper's offenses, that the district court appropriately applied such Sentencing Guidelines regarding the number of firearms involved and further finding no basis for Cooper's contention that the November 1, 1991, amendments to § 2K2.1 of the Sentencing Guidelines were promulgated in violation of the enabling legislation or Congressional intent, we **AFFIRM**.

WOLLMAN, Circuit Judge, concurring and dissenting.

Because I believe that the facts giving rise to the three firearms offenses constituted discrete offenses rather than the same course of conduct, the ex post facto clause, as explained in *United States v. Bell,* 991 F.2d 1445 (8th Cir.1993), mandates that the pre-November 1, 1991, version of the Guidelines be applied to Counts I and II. Whether the sentence ultimately imposed upon Cooper would be any different is hard to say, for I agree that the post-November 1, 1991, grouping rules should be applied to all three counts.

I concur in Parts II and III of the court's opinion.

---

**11.** Subsection (x) provides:

The provisions of section 553 of title 5, relating to publication in the Federal Register and public hearing procedure, shall apply to the promulgation of guidelines pursuant to this section.

28 U.S.C. § 994(x). In *United States v. Lopez,* the D.C. Circuit Court of Appeals applied the principle of *inclusio unius est exclusio alterius* to conclude that by subjecting the Sentencing Guidelines to this singular section of the APA, Congress intended to exclude the application of any other. 938 F.2d 1293, 1297 (D.C.Cir.1991). The First Circuit further noted that its conclusion was supported by the provision's legislative history:

[Section 994(x)] is an exception to the general applicability of the Administrative Procedure Act ... to the judicial branch.

\* \* \* \* \* \*

It is ... not intended that the guidelines be subject to appellate review under chapter 7 of title 5. There is ample provision for review by the Congress and the public; no additional review as a whole is either necessary or desirable.

S.Rep. No. 225, 98th Cong., 1st Sess. 180–81 (1983), *cited in Lopez,* 938 F.2d at 1297.