No. 96-1244

United States of America,          *
                                    *
       Plaintiff - Appellee,        *
                                    *    Appeal from the United States
v.                                  *    District Court for the Western
                                    *    District of Missouri.
Richard H. Strange,                 *
                                    *
       Defendant - Appellant.       *


No. 96-1634

United States of America,          *
                                    *
       Plaintiff - Appellee,        *
                                    *    Appeal from the United States
v.                                  *    District Court for the Western
                                    *    District of Missouri.
Charles A. Zamorano,                *
                                    *
       Defendant - Appellant.       *


Submitted:  September 10, 1996

Filed:  December 13, 1996


Before MAGILL, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
       Judges.


FLOYD R. GIBSON, Circuit Judge.


       Richard Strange and Charles Zamorano pleaded guilty to
violating 21 U.S.C. §§ 841(a)(1), 846 (1994), by conspiring to
distribute and possess with intent to distribute controlled
substances.  Strange and Zamorano appeal the sentences imposed by

the district court,[1] and we affirm.

## I.  BACKGROUND

In February of 1993, Strange, a drug dealer, told his friend and customer Robert Scott that he had located a connection for guaranteed quantities of marijuana, and in subsequent conversations Strange disclosed that Zamorano was his supplier.  A few months later, Strange inquired whether Scott would be willing to accept delivery of a package from El Paso, Texas containing marijuana.  In exchange, Strange agreed to forgive Scott's $50 outstanding balance and to give Scott a discount on future narcotics purchases.  Scott consented to this arrangement, and during the first week of July in 1993 a shipment of approximately five pounds of marijuana arrived at his home.  Scott received a second parcel from El Paso, also consisting of about five pounds of marijuana, in the middle of that month.  On both occasions, Strange promptly travelled to Scott's house and retrieved the contraband.

In late July of 1993, members of the El Paso Airport Drug Task Force, acting in response to a call from an employee of the United Parcel Service, intercepted a package addressed to Scott's Kansas City residence.  The officers located inside the carton 239.5 grams of cocaine hidden within a pair of cowboy boots.  On August 2, 1993, after conducting a controlled delivery of the box to its intended destination, federal agents arrested Scott.  Scott agreed to cooperate with law enforcement personnel, and he provided information indicating that Zamorano transferred drugs to him from El Paso; Scott further divulged that Strange was responsible for taking possession of the narcotics and wiring the illicit proceeds back to Zamorano.  In fact, an investigation revealed that various wire transfers were made to Zamorano from a man in Kansas City

_____

[1]The HONORABLE FERNANDO J. GAITAN, JR., United States District Judge for the Western District of Missouri.

using the name "Bob Scott." A handwriting expert concluded that Strange was the person who had signed as "Bob Scott" to authorize the transfers, and documents on file at Western Union positively identify Zamorano as the individual who collected the wired funds in Texas. In total, approximately $14,410 passed from Kansas City to El Paso during the relatively short life of the machination.

On June 26, 1995, a federal grand jury issued a four count indictment against Strange and Zamorano. Both men pleaded guilty to the first count in the indictment,[2] which described a conspiracy to distribute and possess with intent to distribute illegal drugs in violation of 21 U.S.C. §§ 841(a)(1), 846, in return for the Government's pledge to dismiss the remaining charges against them. At sentencing, both defendants denied knowledge that the third delivery contained cocaine instead of marijuana, and Scott testified that no one had ever told him what would be included in that final shipment. Nonetheless, the district court, over defense objections, held Strange and Zamorano accountable for the quantity of cocaine found in the parcel.

In this appeal, Strange and Zamorano contend the district court committed error when it found they could have reasonably foreseen that the package addressed to Scott might be laden with cocaine. In addition, Strange argues the district court inappropriately calculated the criminal history points assessed against him. We consider these points seriatim.

_____

[2]Although the plea agreements were similar, they differed in at least one respect warranting brief comment. Specifically, Strange pleaded guilty to conspiring to distribute marijuana. Zamorano, on the other hand, admitted in his plea that he conspired to distribute a "controlled substance."

3

## II. DISCUSSION

### A. Relevant Conduct

To arrive at the appropriate sentencing range for a drug defendant, it is invariably necessary for the district court to reference the "relevant conduct" provisions of the United States Sentencing Guidelines. See United States v. Hayes, 971 F.2d 115, 117 (8th Cir. 1992)("[A] key step in sentencing a drug defendant is to calculate the type and quantity of drugs attributable to that defendant."). In the present case, the district judge applied Guideline § 1B1.3(a)(1)(B) to hold Strange and Zamorano answerable for the 239.5 grams of cocaine located in the third package delivered to Scott. Under that paragraph, a defendant engaged in "jointly undertaken criminal activity" is deemed responsible for "[t]he conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant." U.S. Sentencing Guidelines Manual § 1B1.3 application note 2 (1995). In other words, as relevant to a narcotics conspiracy, a drug defendant is accountable for all contraband "within the scope of criminal activity jointly undertaken by [the defendant] and reasonably foreseeable to him." United States v. Townley, 929 F.2d 365, 370 (8th Cir. 1991).

Strange and Zamorano now assert, as they did before the district court, that the Government has failed to prove the scope of their conspiracy extended to encompass cocaine. Rather, the dealers maintain the evidence shows that they contrived to exclusively distribute marijuana. Similarly, given the limited nature of their enterprise, they declare that it could not have been reasonably foreseeable to them that the pertinent package would include cocaine. For these reasons, they contend that the district court incorrectly augmented their sentences by incorporating cocaine into the amount of drugs attributable to them. We will reverse only if the district court committed clear

4

error when ascertaining drug quantity.  See United States v. Smith, 49 F.3d 362, 365 (8th Cir.), cert. denied, 115 S. Ct. 2009 (1995).

Before moving to the merits of this issue, we pause to reflect upon the conduct to which Strange and Zamorano have admitted or that the Government proved by a preponderance of the evidence.  It is beyond cavil that both conspirators played instrumental roles in orchestrating the transportation of the package in question. Strange introduced Zamorano and Scott, and he concedes that he acted as a "facilitator" for the various narcotics shipments.  To be sure, his awareness of the final conveyance is evidenced by a phone call he made to Scott during which he queried whether the parcel had arrived.  Likewise, Zamorano confirms that he arranged the delivery through his "source" in El Paso.  Thus, though Strange and Zamorano acknowledge considerable involvement with the illegal mailing, each of the confederates professes to have believed that the carton would contain marijuana, not cocaine.[3]

Within this factual context, we are persuaded that it would have been more fitting to assess the conspirators' responsibility for the cocaine under Guideline § 1B1.3(a)(1)(A).[4]  Unlike paragraph (a)(1)(B), which the district court utilized to hold Strange and Zamorano liable for the "acts and omissions of others," paragraph (a)(1)(A) appertains to conduct personally undertaken by

---

[3]The appellants proffer quite different explanations for the presence of the cocaine within the package.  Strange speculates that Zamorano, without consulting either of his associates, might have taken it upon himself to include cocaine in the shipment. Zamorano, of course, does not join in this postulation, but instead posits that his "source" probably sent the wrong box to Scott's address.  It is worth mentioning that, to date, Zamorano has not identified his "source."

[4]The district court did not address paragraph (a)(1)(A) at sentencing, but it is well established that we may affirm a defendant's sentence on any ground supported by the record.  See United States v. Garrido, 995 F.2d 808, 813 (8th Cir.), cert. denied, 510 U.S. 926 (1993).

the defendant being sentenced.[5]  See U.S. Sentencing Guidelines Manual § 1B1.3(a)(1) (1995).  For instant purposes, the following elaboration within the Guideline's application notes is of particular moment:

> With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved . . . .
>
> The requirement of reasonable foreseeability applies only in respect to the conduct (i.e., acts and omissions) of others under subsection (a)(1)(B).  It does not apply to conduct that the defendant personally undertakes . . .; such conduct is addressed under subsection (a)(1)(A).

U.S. Sentencing Guidelines Manual § 1B1.3 application note 2 (1995).  Simply stated, reasonable foreseeability is significant solely when evaluating relevant conduct under § 1B1.3(a)(1)(B); it is completely immaterial to the analysis guided by § 1B1.3(a)(1)(A).[6]  See United States v. Lockhart, 37 F.3d 1451, 1454 (10th Cir. 1994)("Because defendant personally participated in the transaction giving rise to the 1.5 kilograms that the trial court attributed to defendant, the foreseeability of the quantity was

---

[5]We emphasize that it is wholly appropriate to employ paragraph (a)(1)(A) even when, as here, the defendant being sentenced stands convicted of a conspiracy only.  United States v. Chalarca, 95 F.3d 239, 243 (2d Cir. 1996)("The fact that one is convicted of conspiracy to distribute narcotics does not necessarily call for the application of the jointly undertaken criminal activity Guidelines.").

[6]To the degree that our opinion in Hayes, 971 F.2d at 117-18, might be read to interpolate reasonable foreseeability as a factor for consideration under paragraph (a)(1)(A), we note that the decision there predated the 1992 amendments to the Sentencing Guidelines.  In November of that year, the United States Sentencing Commission modified § 1B1.3 and its application notes to expressly clarify that reasonable foreseeability is not germane to an evaluation of acts and omissions personally pursued by the defendant.  See U.S. Sentencing Guidelines Manual app. C at 256-64 (1992)(amendment 439).

6

irrelevant."); <u>United States v. Corral-Ibarra</u>, 25 F.3d 430, 438 (7th Cir. 1994)("[T]he critical distinction is between direct and remote involvement in an illegal activity because only the latter will trigger a reasonable foreseeability inquiry."); <u>cf.</u> <u>United States v. Tran</u>, 16 F.3d 897, 905 (8th Cir. 1994)(declining to consider reasonable foreseeability where the appellant was intimately involved with the drugs at issue).

Mindful of these precepts, we have no difficulty in determining that the district court correctly attributed the 239.5 grams of cocaine to Strange and Zamorano. Through their own actions, the two men aided, abetted, and wilfully caused the conveyance to Scott of at least three packages. <u>See</u> U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(A) (1995). Their convictions verify that they embarked upon this behavior with the requisite criminal intent and with every expectation of receiving some type of illegal drug to distribute. Accordingly, under the scheme sanctioned by Congress, and without regard to reasonable foreseeability, they are accountable at sentencing for the full quantity of all illegal drugs located within the parcels.[7] <u>See</u> <u>id.</u> § 1B1.3 application note 2, illus. (a)(1) (suggesting that a drug defendant is chargeable at sentencing for any narcotic with which he was directly involved "regardless of his knowledge or lack of

---

[7]To qualify as relevant conduct under § 1B1.3(a)(1), the act or omission must also have occurred, among other impertinent alternatives, "during the commission of the offense of conviction." U.S. Sentencing Guidelines Manual § 1B1.3(a)(1) (1995). The Government has satisfied this prerequisite in the current appeal. We have previously interpreted the term "offense of conviction" to mean "the substantive offense to which the defendant pleads guilty," <u>United States v. Morton</u>, 957 F.2d 577, 579 (8th Cir. 1992), and a conspiracy does not expire until "after the last overt act committed during the existence of the conspiracy," <u>United States v. Lewis</u>, 759 F.2d 1316, 1347 (8th Cir.), <u>cert. denied</u>, 474 U.S. 994 (1985). By coordinating the shipment of drugs to Scott's home, Strange and Zamorano committed overt acts during the commission of the conspiracy to which each pleaded guilty.

knowledge of the actual type or amount of that controlled substance"); <u>United States v. Salazar</u>, 5 F.3d 445, 446 (9th Cir. 1993)("The base offense level for guideline sentencing may be determined by the volume of the drug actually [embraced by the offense of conviction], whether or not the defendant knows either the volume or the nature of the substance . . . ."). While we recognize full well that this could, in some cases, result in what might appear to be disproportionate sentences, it is certainly within the province of Congress to resolve that there is some deterrent value in exposing a drug trafficker to liability for the full consequences, both expected and unexpected, of his own unlawful behavior. <u>Cf.</u> <u>United States v. Obi</u>, 947 F.2d 1031, 1032 (2d Cir. 1991)(per curiam)("Congress, for purposes of deterrence, intended that narcotics violators run the risk of sentencing enhancements concerning other circumstances surrounding the crime.").

**B. Strange's Criminal History Category**

Strange additionally propounds that the district court committed a number of errors in calculating his criminal history category. "We review de novo the district court's construction and interpretation of Chapter Four of the Guidelines, and we review for clear error the district court's application of Chapter Four to the facts." <u>United States v. Jones</u>, 87 F.3d 247, 248 (8th Cir.)(per curiam), <u>cert. denied</u>, 65 U.S.L.W. 3309 (U.S. Oct. 21, 1996)(No. 96-6074). As explicated below, we conclude that the district court correctly computed Strange's criminal history category.

**1. Strange's prior sentences as "related cases"**

A defendant's criminal history category is dictated by the amount of criminal history points levied against him. In large measure, the sum of criminal history points is linked to the defendant's "prior sentences." <u>See</u> U.S. Sentencing Guidelines

8

Manual § 4A1.1 (1995). Although the Guidelines direct a district court to assess separate points for prior sentences decreed in unrelated cases, they further instruct that "[p]rior sentences imposed in related cases are to be treated as one sentence." Id. § 4A1.2(a)(2).

Because many of Strange's manifold past convictions were consolidated for sentencing, he asked the district court to treat those adjudications as related cases under the Guidelines. The court denied this request, however, based on a 1991 amendment to the application notes which specifies that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." U.S. Sentencing Guidelines Manual § 4A1.2 application note 3 (1995). Strange does not deny that his previous sentences were for offenses separated by intervening arrests, but he still insists that the district court should have used the pre-1991 version of the Guidelines when tallying his criminal history points.

This assertion is untenable. We have often held that "the sentencing court should apply the Sentencing Guidelines in effect at the time of sentencing unless the court determines that such application would violate the ex post facto clause." United States v. Cooper, 35 F.3d 1248, 1251-52 (8th Cir. 1994), vacated, 115 S. Ct. 1820 (1995), and reinstated by 63 F.3d 761, 763 (8th Cir. 1995)(per curiam), cert. denied, 116 S. Ct. 1548 (1996). An infringement of the ex post facto clause occurs only if the operative Guidelines at sentencing "produce a sentence harsher than one permitted under the Guidelines in effect at the time the crime is committed." United States v. Reetz, 18 F.3d 595, 598 (8th Cir. 1994)(quotation omitted); see also California Dep't of Corrections v. Morales, 115 S. Ct. 1597, 1602 n.3 (1995)("[T]he focus of the ex post facto inquiry is . . . on whether any [legislative] change alters the definition of criminal conduct or increases the penalty

9

by which a crime is punishable.").  Here, the Guideline provisions under discussion remained the same from the time Strange committed his crime, in the summer of 1993, until the date of his sentencing. Consequently, he cannot seriously suggest that he should be the beneficiary of the pre-1991 Guidelines.[8]

## 2. Strange's prior uncounseled conviction

Strange did not have legal representation in 1989 when the State of Missouri convicted him for possession of under 35 grams of marijuana.  He now protests that he did not make a knowing and intelligent waiver of counsel in that case.  Hence, according to Strange, the district court committed error when it assessed a criminal history point applicable to that offense.

Normally, defendants are not permitted to use a federal sentencing proceeding as a forum to challenge a prior conviction. See U.S. Sentencing Guidelines Manual § 4A1.2 application note 6 (1995)(explaining that the district court should not count sentences resulting from convictions ruled constitutionally invalid "in a prior case"); United States v. Jones, 28 F.3d 69, 70 (8th Cir. 1994)(per curiam)("The Sentencing Guidelines simply preclude [defendant] from collaterally attacking his Nebraska conviction in this federal sentencing proceeding.").  We have, however, recognized a constitutionally mandated exception to that general rule where a defendant claims that a previous conviction was obtained following a constitutionally unsound waiver of counsel. See Jones, 28 F.3d at 70 ("The Constitution only requires federal courts to permit a collateral attack on an earlier state conviction

---

[8]We realize that Strange might intend to argue that the pre-1991 Guidelines should apply because his prior offenses occurred before that date.  This allegation is implausible.  Cf. United States v. Allen, 886 F.2d 143, 146 (8th Cir. 1989)("So long as the actual crime for which a defendant is being sentenced occurred after the effective date of the new statute, there is no ex post facto violation.").

during federal sentencing when the defendant asserts the state court violated the defendant's right to appointed counsel."). But cf. United States v. Porter, 14 F.3d 18, 19 (8th Cir. 1994)(implying, in a panel opinion in which two circuit judges concurred in the result only, that a constitutional challenge based on an invalid waiver of counsel is not cognizable at sentencing). Even so, Strange--through his bare bones, single sentence argument unsupported by authority--has completely failed to carry his burden of demonstrating that his state court conviction was constitutionally infirm, and we thus reject on the merits this ground for reversal.[9] See United States v. Early, 77 F.3d 242, 245 (8th Cir. 1996)(per curiam)("[O]nce the Government has carried its initial burden of proving the fact of conviction, it is the defendant's burden to show a prior conviction was not constitutionally valid."); United States v. Jackson, 57 F.3d 1012, 1018-19 (11th Cir.)(requiring a defendant to sufficiently assert facts showing that a prior conviction is presumptively void), cert. denied, 116 S. Ct. 432 (1995).

### 3. Strange's conviction for driving a motor vehicle with excessive blood alcohol content

In 1990, a state court sentenced Strange for driving a motor vehicle with excessive blood alcohol content, and we summarily rule that the district court properly added a criminal history point for that offense. U.S. Sentencing Guidelines Manual § 4A1.2

---

[9]Strange also avers that the district judge should not have included this offense in his criminal history score because the state court merely imposed a fine, and no jail time, for the conviction. Strange is mistaken. Section 4A1.1(c) of the Guidelines is explicitly designed to apply to prior sentences in which only a fine was ordered. See U.S. Sentencing Guidelines Manual § 4A1.1 background at 256 (1995)("Subdivisions (a), (b), and (c) of §4A1.1 distinguish confinement sentences longer than one year and one month, shorter confinement sentences of at least sixty days, and all other sentences, such as . . . fines . . . .").

application note 5 (1995)("Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of §4A1.2(c)."). Contrary to Strange's characterization of Missouri's law, driving a motor vehicle with excessive blood alcohol content is absolutely not a lesser included offense of driving while intoxicated. See State v. Robertson, 764 S.W.2d 483, 485 (Mo. Ct. App. 1989)("The offense of driving a motor vehicle with excessive blood alcohol is not a lesser included offense of driving while intoxicated.").

**III. CONCLUSION**

The district court properly calculated the quantity of drugs attributable to Strange and Zamorano, and it committed no error in determining Strange's criminal history category. As such, we affirm the sentences in this case.

AFFIRMED.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.